**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JULIE McPHAIL,

                    Plaintiff,                              CASE NO. 12-12134
                                                  HON. LAWRENCE P. ZATKOFF

v.

COUNTY OF MACOMB, MACOMB COUNTY
SHERIFF'S DEPARTMENT, MACOMB COUNTY
SHERIFF ANTHONY WICKERSHAM, MACOMB
JOHN DOES, TOWNSHIP OF CHESTERFIELD,
CHESTERFIELD TOWNSHIP POLICE CHIEF
BRUCE J. SMITH, CHESTERFIELD TOWNSHIP
POLICE DEPARTMENT, and CHESTERFIELD
JOHN DOES,

                    Defendants.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on the 15th day of January, 2014

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

        This matter is before the Court on: (1) a Motion for Summary Judgment filed by Defendants

Township of Chesterfield (the "Township"), Chesterfield Township Police Chief Bruce J. Smith

("Smith"), Chesterfield Township Police Department ("CTPD") and "Chesterfield John Does"

(collectively, the "Township Defendants") (Docket #30), and (2) a Motion for Summary Judgment

filed by Defendants County of Macomb (the "County"), Macomb County Sheriff's Department

("MCSD"), Sheriff Anthony Wickersham ("Wickersham"), and "Macomb John Does" (collectively,

the "County Defendants") (Docket #31).  Plaintiff filed a joint response to the summary judgment

motions, and the Township Defendants and the County Defendants each filed a reply.[1]  The Court

finds that the facts and legal arguments pertinent to the motions are adequately presented in the

parties' papers, and the decision process will not be aided by oral arguments.  Therefore, pursuant

to E.D. Mich. Local R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs

submitted by the parties, without this Court entertaining oral arguments.  For the reasons that follow,

both motions for summary judgment are GRANTED.

## II.  BACKGROUND

This case arises out of injuries Plaintiff suffered on May 20, 2011, as a result of an apparent

fall from a bench in the Macomb County Jail ("MCJ").  Plaintiff is an epileptic woman and mother

of three small children. On May 19, 2011, CTPD officers and State of Michigan Child Protective

Services ("CPS") employees arrived at Plaintiff's home to remove Plaintiff's children pursuant to

a court order.

After the CTPD officers and CPS employees were permitted to enter the home, Plaintiff

began shouting that she would not allow the CPS employees to remove the children. When the

CTPD officers attempted to take physical control of Plaintiff, she pushed one officer and kicked the

other officer in the face, resulting in broken glasses and injuries to his right eye.  Plaintiff was then

handcuffed and arrested.  Plaintiff asserts that, during the arrest, she: (1) told the officers that she

was epileptic, and (2) asked that she be allowed to bring anti-seizure medication with her. According

to the allegations in the Complaint, the officers told her, "Too bad" and "You'll get it if we give it

---

[1]For the reasons set forth therein, the Court hereby GRANTS the County Defendants' Ex Parte
Motion to Allow Reply Brief in Excess of Page Limitation (Docket #35).

to you." According to the Township Defendants, the CTPD officers refused to allow Plaintiff to bring her medication with her because of a CTPD policy that prohibits prisoners from being transported with any sort of medication or other drugs.

The CTPD officers transported Plaintiff to the CTPD lockup, where she was processed, booked, and at approximately 1:15 p.m., placed in a cell. During booking at the CTPD lockup, Plaintiff was informed that she was going to be transferred to the MJC and that the MJC had a "hospital type setting." In accordance with the Township's written policy regarding health care services for prisoners in lockup, Plaintiff was medically screened while at the CTPD lockup prior to being transported to the MCJ. Plaintiff made no request for medical attention while in the CTPD lockup, and the CTPD records indicate that Plaintiff was acting normally. Plaintiff admits she had no seizures, falls or any other injuries while in the custody of the CTPD. While at the CTPD lockup, Plaintiff did not make any telephone calls and did not otherwise attempt to contact her boyfriend (who was also arrested at her home on May 19, 2011) or anyone who might be able to bring her medication. During the time she was at the CTPD lockup, the on-duty officers monitored Plaintiff and checked on her eight separate times between her intake and her transfer to the MCJ. Plaintiff remained in the cell at the CTPD lockup until approximately 6:30 p.m. that evening, when she was transferred to the MCJ.

MCJ records show Plaintiff was booked and processed at 8:47 p.m. on May 19, 2011. During her intake, Plaintiff notified officials at MCJ that she needed her epilepsy medication and, if she did not get it, she would have a seizure. That same evening, Plaintiff was seen by the medical staff of Correctional Medical Services, Inc. ("CMS"). CMS is a medical provider that the County had previously entered into a Health Services Agreement with, whereby CMS would provide MCJ

inmates with medical services. A CMS nurse recorded Plaintiff's vital signs, asked Plaintiff a series of medical questions, and documented Plaintiff's then-current medical care and treatment. In addition, the CMS nurse documented that Plaintiff had notified her that: (1) Plaintiff had a "seizure disorder," (2) she needed her epilepsy medication immediately, and (3) if she did not receive that medication, she would have seizures. The nurse prepared a Medication Verification Form outlining Plaintiff's current medication regimen, and Plaintiff executed a Request for Authorization for the pharmacy and physician Plaintiff had identified to the nurse. Plaintiff was then referred to mental health personnel, and a psychological screening form was completed and executed by Plaintiff on May 20, 2011, at 1:10 a.m. The records of the CMS nurse indicate that she faxed a Medication Verification Form to the pharmacy identified by Plaintiff in an effort to verify the medication regimen Plaintiff had communicated to the CMS nurse. It is undisputed that: (a) CMS could not verify Plaintiff's medication regimen (either because the pharmacy was unable to verify Plaintiff's anti-seizure medications and/or because the pharmacy did not respond to the CMS nurse), and (b) the CMS physician did not order CMS staff to disburse any medication to Plaintiff on May 19 or May 20, 2011. Plaintiff and her sister testified that Plaintiff: (1) had lost her health insurance shortly before the incident at issue, (2) had switched doctors shortly before the incident, and (3) had not regularly medicated herself or filled her prescription regularly in the months preceding the incident. At some point after breakfast on May 20, 2011, Plaintiff had a gran mal seizure at the MCJ.

Plaintiff testified that she routinely took her anti-seizure medication at 6:45 a.m. and 6:45 p.m. Plaintiff testified that, on May 19, 2011, she took her morning dose and that her next dose was due at 6:45 p.m. that evening; therefore, she missed two dosages of her anti-seizure medication between the time of her arrest by the CTPD officers on May 19, 2011, and the time she suffered a

4

seizure on May 20, 2011 (*i.e.*, once the evening of May 19, 2011 and once the morning of May 20, 2011).  Plaintiff testified that she would not have had a seizure if she had received her medication at any time prior to her seizure.

### III.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex*, 477 U.S. at 323.  The moving party discharges its burden by "'showing'–that is, pointing

5

out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

# IV.  ANALYSIS

## A.     Dismissal of the John Doe Defendants

Plaintiff has failed to identify, name or serve the purported Defendants labeled in the case caption as the "Chesterfield John Does" and the "Macomb John Does."  As such, Plaintiff's cause of action against those Defendants is subject to dismissal. *See Petty v. County of Franklin, Ohio*, 478 F.3d 341 (6th Cir. 2007).  The Court also notes that Plaintiff did not address this issue in its response brief; that failure constitutes a waiver of those claims such that summary judgment on those claims is also appropriate for that reason. *See Scott v. State of Tenn.*, 878 F.2d 382 (6th Cir. 1989).  Accordingly, the Court DISMISSES Plaintiff's cause of action against the Chesterfield John Does and the Macomb John Does.

## B.     Dismissal of the Department Defendants

CTPD and MCSD are entitled to dismissal as a matter of law because they are not subject to suit under federal and state law. "Sheriff's departments and police departments are not usually considered legal entities subject to suit, but capacity to sue or be sued shall be determined by the law of the state in which the district court is held." *Dean v. Barber*, 951 F.2d 1210, 1214-15 (11th Cir 1992) (internal citations and quotations omitted)). Michigan courts have held that, because police departments and other municipal departments are "unable to raise funds for payment," they cannot be sued for torts. *Machonski v. City of Detroit*, 162 Mich.App. 485 (1987); *McPherson v. Fitzpatrick*, 63 Mich. App. 461, 464 (1975). *See also Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (citing *Kurz v. State of Michigan*, 548 F.2d 172, 174 (1977) (sheriff departments are not legal entities subject to suit)). The Court also notes that Plaintiff did not address this issue in its response brief. For those reasons, the Court DISMISSES Plaintiff's cause of action against CTPD and MCSD.

## C.    Deliberate Indifference

In order to state an Eighth Amendment violation regarding medical treatment, a prisoner must demonstrate that the defendant acted, or failed to act, with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). *See also Helling v. McKinney,* 509 U.S. 25, 32 (1993) (when a governmental entity "so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs–*e.g.*, ... medical care ..., it transgresses the subjective limits on state action by the Eighth Amendment"). A finding of deliberate indifference is satisfied if the plaintiff can establish both an objective component and a subjective component. First, the plaintiff must show "the existence of a sufficiently serious medical need" or a condition that is objectively serious. *Farmer v. Brennan*, 511

7

U.S. 825 (1994); *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Second, the plaintiff must show the prison official knew of the need or condition and acted with deliberate indifference toward the inmate's health or safety, which is a subjective standard. *Farmer*, 511 U.S. at 838-39; *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (citing *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991)). It is undisputed that untreated epilepsy is an objectively serious medical condition; therefore, the objective component of the test is satisfied here.

As to the second component, both the Township Defendants and the County Defendants assert that Plaintiff cannot satisfy the second prong, as a matter of law. The Court notes that Plaintiff has not identified, and the Court has held, that there is no genuine dispute of material fact as to the liability of any individual who had any contact with Plaintiff on May 19-20, 2011; rather, the Court has dismissed Plaintiff's claims as they relate to purported individual actors. Nonetheless, Plaintiff claims that the actions (or, to be more precise, the inactions) of numerous persons employed by – or who contracted with – the Township and/or the County caused her injuries. Therefore, the Court analyzes whether such actors were deliberately indifferent to Plaintiff's health or safety.

The "subjective component" of a deliberate indifference claim requires Plaintiff to establish that a "prison official" knew of and acted with deliberate indifference toward an inmate's health or safety. *Id.* The inmate must show that the prison official had a "sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). The official must "both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and must also draw that inference." *Id.* This standard requires a showing of "something more than mere negligence." The Defendant must have "recklessly disregarded a known risk." This is a very high standard of culpability exceeding gross negligence. *Ross v. Duggan*, 402 F.3d 575, 590

8

n.7 (6th Cir. 2004). Further, because culpability under this test is personal, the subjective component must be addressed for "each officer individually." *Meier v. County of Presque Isle*, 376 Fed.Appx. 524, 528-29 (6th Cir. 2010) (citing *Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005)).

1.     *The Township Defendants*

It is undisputed that no one associated with the Township, including the CTPD officers, provided any medical treatment to Plaintiff.  It is further undisputed that the absence of medical treatment stemmed from, and was in accord with, a Township policy that provides: (1) CTPD officers will not transport or administer medicines to detainees; (2) CTPD officers only medically screen detainees by asking if there are any medical or health issues and then summon paramedics to address the situation if a detainee is "ill or injured;" and (3) detainees will be medically evaluated when they get to the MCJ.  As stated in an uncontradicted affidavit, CTPD Lieutenant Charles Vershaeve averred that the CTPD policy regarding medication for detainees was established because police officers are neither licensed by the State of Michigan to dispense, administer or prescribe medication, nor trained in pharmacology or any other medical degree and, as such, cannot identify or verify the contents of a prescription pill bottle.  This rationale is consistent with MCL § 333.7303, which provides that only licensed persons may distribute, prescribe, or dispense controlled substances, which Plaintiff's anti-seizure medication undisputedly was. Further, MCL § 333.7303a states that only persons designated and supervised by licensed doctors may administer these same medications.

The Court finds that the Township policy is reasonable, as it precludes CTPD officers, who are untrained and unqualified to handle medications, from: (a) handling medications that may cause

9

harm to detainees, and (b) violating Michigan law.  As such, the Court finds that the Township policy was not lacking in justification or deliberately indifferent to the medical needs of persons who "need regular and constant mediation to avoid serious harm or injury."  The Court also notes that Plaintiff offered no legal authority to support her conclusory arguments that the Township policy: (1) lacked justification or reasonableness, (2) was deliberately indifferent to Plaintiff's needs, or (3) was unconstitutional.

Plaintiff also argues that the Township Defendants can be held liable under a "delay in treatment" theory.  Plaintiff relies on cases from the Eighth and Tenth Circuits. *See Kikumura v. Osagie*, 461 F.3d 1269, 1292, 1295-96 (10th Cir. 2006) (holding that the delay must be shown to have caused "substantial harm," including pain suffered while awaiting treatment); *Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000) (holding that delay constitutes deliberate indifference where the plaintiff can show that the delay caused substantial harm; this harm can include unnecessarily prolonged pain and suffering); *Spann v. Roper*, 453 F.3d 1007, 1008-09 (8th Cir. 2006) (holding that a jury could find a three-hour delay in addressing a medication overdose was objectively sufficiently serious).

The cases Plaintiff relies on are so factually distinguishable from the circumstances in this case, however, that they are not helpful to the Court's analysis.  Most significantly, (1) the delay "attributable" to the Township Defendants was approximately 5.5 hours, (2) Plaintiff ceased being within the custody or control of the Township Defendants more than 12 hours prior to her seizure, (3) CTPD officers recorded that Plaintiff was epileptic upon booking her, but Plaintiff did not suffer or exhibit signs of a seizure at any time while in the custody or control of the Township Defendants, (4) Plaintiff admitted she did not have an immediate medical need while in the custody or control

of the Township Defendants, (5) Plaintiff did not stumble, fall or suffer any harm while under the custody or control of the Township Defendants, (6) the CTPD officers regularly checked on Plaintiff, (7) no one attempted to bring medication to Plaintiff at the CTPD lockup (or the MCJ), and (8) the Plaintiff did not request to see a doctor. Simply put, Plaintiff has offered no evidence that the delay of 5.5 hours caused her to have the seizure and suffer injuries the following morning, nor has she offered any evidence that anyone associated with the Township acted with deliberate indifference toward her. *See, e.g.*, *Shaffmaster v. Murphey*, 2000 WL 246604, at *2 (E.D. Mich. 2000) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) ("A delay in medical care does not constitute a violation of the Eighth Amendment unless there has been deliberate indifference which results in substantial harm.")). Therefore, the Court cannot find that: (a) the conduct of the Township Defendants rose to the level of deliberate indifference to a serious medical need, or (b) Plaintiff suffered any injury due to the conduct of any of the Township Defendants.

Accordingly, for the reasons set forth above, the Court concludes, as a matter of law, that Plaintiff's claims of deliberate indifference against the Township Defendants must fail.

2.    *The County Defendants*

The County has a constitutional obligation to provide medical attention to inmates with serious medical needs. A constitutional deprivation occurs, however, only where the County, through the implementation of its policies and procedures, is shown to be deliberately indifferent toward an inmate's health or safety. *Graham v. Cty. of Washtenaw*, 358 F.3d 377 (6th Cir. 2004). In *Graham*, the Sixth Circuit concluded that by retaining an independent medical professional, a county jail satisfies its Eighth and Fourteenth Amendment obligation to provide medical care, stating as follows:

11

> Nor is it unconstitutional for municipalities and their employees to rely on medical judgments made by medical professionals responsible for prisoner care. In fact, most would find such a policy laudable in many respects. Not only does such a policy-like the one at issue in this case-allow prisoners to receive prompt health care from on-site doctors and nurses, it also ensures that an independent party, rather than a corrections officer, makes the critical decisions about whether and at what point a prisoner's medical needs are sufficiently severe and ambulatory care or hospitalization is warranted.

*Id.* at 384-385.  In *Graham,* the plaintiff claimed injury from malpractice committed by a nurse at the county jail. The court held that even if malpractice existed, the plaintiff could not state a claim or cause of action against the county:

> Graham's argument is essentially that the County's policy did not, in this particular case, adequately address Mr. Graham's specific medical needs. That may be so. However, "[t]he fact that alternative procedures might have better addressed [a prisoner's] particular needs does not show that the [County was] deliberately indifferent to his medical needs." ... Even if, as Graham contends, the policy required jail personnel to defer to the medical decisions of SecureCare employees, and even if it permitted licensed practical nurses to make medical decisions that Michigan law does not permit them to make, those alleged defects are insufficient to hold the County liable for the alleged constitutional violation in this case. **It is possible that Mr. Graham received medical care that fell below the applicable standard of care under Michigan law. It is even possible that the medical care that he received was so woefully inadequate as to rise to the level of a constitutional violation. But even assuming that Graham did suffer a constitutional violation, that violation "resulted from factors other than a faulty [County policy]."**

*Id.* (internal citation omitted) (emphasis added).  The *Graham* court also noted that municipal liability cannot be imposed where "an otherwise sound government program has occasionally been negligently administered." *City of Canton*, 489 U.S. at 390-391. The fact that an individual actor may "occasionally make mistakes…says little about the…legal basis for holding the [county]

liable." *Id.*      In this case, the County's (the MCSD's) policy states: "The County shall engage the services of a qualified health care vendor [provider] to ensure that medical services are rendered to in-custody prisoners . . ."  The policy further provides: "All medical, psychiatric, and dental inmate matters involving medical judgment are the sole province of the responsible physician, dentist or other qualified health care professional."  Pursuant to the Health Services Agreement, the County contracted with CMS, a licensed health care provider that employs licensed physicians and other health care professionals, to medically screen and provide medical care and attention to MCJ inmates.  As set forth in *Graham*, absent circumstances not present here (as discussed below), the County fulfilled its constitutional obligation to provide medical care to MCJ inmates (including Plaintiff) when it entered into the Health Services Agreement with CMS. *See Graham*, 358 F.3d at 384 (defendant entitled to summary judgment because a policy of deferring to medical professionals was not deliberately indifferent to the plaintiff's medical need).  In other words, the fact that County entered into the Health Services Agreement with CMS to provide health care services to the MCJ inmates generally dictates a finding, as a matter of law, that the County was not deliberately indifferent to the medical needs of the MCJ inmates and is entitled to summary judgment on a claim of deliberate indifference to a medical need.

Plaintiff fails to allege and, more significantly, fails to offer any evidence that could support a finding that the County was deliberately indifferent to the medical needs of MCJ inmates, generally, or Plaintiff, specifically.  Plaintiff alleges that she received inadequate medical care from a licensed nurse at CMS because Plaintiff was not given anti-seizure medication that Plaintiff told the nurse she needed.  It is undisputed, however, that the CMS nurse never received verification regarding Plaintiff's anti-seizure medication from any source, including the pharmacy Plaintiff

identified and the physician Plaintiff identified.  In the absence of verification, CMS employees cannot be faulted for not handing out the medication simply because Plaintiff said she needed it. *See, e.g.*, *Givens v. Jones*, 900 F. 2d. 1229, 1232 (8th Cir. 1990) ("Certainly physicians do not, and should not, necessarily accept as true the medical judgments offered by their patients. They must make treatment decisions on the basis of a multitude of factors, only one of which is the patient's input.").  Moreover, claims of inadequate medical care (*i.e.*, malpractice claims), even if meritorious, are insufficient to support a constitutional claim of deliberate indifference against a municipality. *See Graham,* 358 F.3d at 384-85 (quoting *West Lake v. Lucas*, 537 F. 2d. 857 (6th Cir. 1976) ("where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state or tort law.")).

Finally, in her response brief (but not in her Complaint), Plaintiff asserts that "Plaintiff is aware of at least four prior incidents in which CMS failed to give epilepsy medication and/or treat the condition to its inmates in the State of Michigan – Mike Woodhill, Mark Fischer, Allen Quigly, and Clarence Potts."  Such allegations <u>might</u> form the basis of a deliberate indifference claim: (a) <u>if</u> supported by evidence that <u>the County or any the County Defendants</u> were aware of CMS's alleged failures, and (b) <u>if</u> there was evidence that such failures actually occurred.  If those two things were true, it is possible that Plaintiff could maintain a deliberate indifference claim based on establishing "a direct causal link" between the policy and the alleged constitutional violation such that the County's "deliberate conduct" could be deemed the "moving force" behind the violation. *Waters v. City of Morristown*, 242 F.3d 353, 362 (6th Cir.2001) (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)) (quotation marks omitted); *see also Searcy v. City of Dayton*, 38

14

F.3d 282, 286 (6th Cir.1994).   In this case, however, Plaintiff assertions are unsupported by affidavit, deposition, or other admissible evidence and, as such, are insufficient to avoid summary judgment. *Calbillo v. Canvender Oldsmobile, Inc.*, 288 F. 3d. 721, 725 (5th Cir. 2002) ("The non-movant cannot avoid summary judgment…by merely making conclusory allegations or unsubstantiated assertions").   In addition, Plaintiff fails to identity when, where, or under what circumstances CMS denied epilepsy medication to four other inmates, nor does she link any of these occurrences to the County.   In fact, Plaintiff does not even allege that the County or any County Defendant knew of the "four prior incidents in which CMS failed to give epilepsy medication and/or treat the conditions to its inmates in the State of Michigan."

Accordingly, the Court holds that the County Defendants are entitled to summary judgment on Plaintiff's claim that they were deliberately indifferent to Plaintiff's medical needs.

*3.*      *Smith and Wickersham*

Defendants Smith and Wickersham are also entitled to summary judgment on Plaintiff's claims of deliberate indifference because:

> A supervisor is not liable pursuant to § 1983 for failing to train unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982).   Plaintiff failed to address this issue in its response brief, thus waiving her claims against them. *See Scott, supra*.   Moreover, the record is devoid of any allegations – to say nothing of evidence – that either Smith or Wickersham "encouraged," "participated" in, or even "implicitly authorized, approved, or knowingly acquiesced"

15

in, any of the alleged misconduct. *Hays,* 668 F.2d at 874.  As such, Plaintiff's claims against Smith and Wickersham must be dismissed, as a matter of law.

**B.      Claims Regarding Policy, Procedure, Custom or Practice[2]**

To state a claim against a municipality under 42 U.S.C. §1983, Plaintiff must prove that a violation of her constitutional rights resulted from a "custom, policy, or practice" of the municipality. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978). *See also City of Canton, supra*. Plaintiff has the burden of setting forth with particularity the existence of the offending policy or custom and linking the policy or custom to the injury alleged:

> If a City may be liable only when the injury is inflicted in the execution of City policy, the **Complaint must identify the policy, connect the policy to the City itself, and show that the particular injury was incurred because of the execution of that policy.** Plaintiff must, of course, prove that the injury was caused by the City policy.

*Coogan v. City of Wixom,* 820 F.2d 170, 176 (6th Cir 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001) (emphasis added). Plaintiff cannot plead a Section 1983 cause of action with conclusory language. Plaintiff must set forth the specific policy and establish the manner in which it caused the injury. *Gregory v. Shelby Cty., Tenn.*, 220 F.3d 433, 442 (6th Cir. 2000); *Monell*, 436 U.S. at 692. *See also Facteau v. Unknown Officers and Agents of Clinton Twp.,* 596 F.Supp. 580, 582-83 (E.D. Mich. 1984).

---

[2]As Plaintiff did not suffer any alleged constitutional violation caused by the Township Defendants or the County Defendants, the Township Defendants and the County Defendants are entitled to summary judgment on Plaintiff's entire Complaint. *See Watkins v. City of Battle Creek,* 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation …, the [governmental] defendants cannot be held liable under § 1983") (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986)).  In the interests of ascertaining the merits of each of Plaintiff's claims, however, the Court shall address Plaintiff's other claims herein.

In the context of prisoner medical care:

> [Plaintiff] must show: (1) a clear and persistent pattern of mishandled medical emergencies for pre-arraignment detainees; (2) notice, or constructive notice of such pattern, to the [Township]; (3) tacit approval of the deliberate indifference and failure to act amounting to an official policy of inaction; and (4) that the custom or policy of inaction was the "moving force," or direct causal link, behind the constitutional injury.

*Garretson*, 407 F.3d at 796 (citing *Doe v. Claiborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996)).

In *Garretson,* Garretson was arrested and detained by police officers of the City of Madison Heights (the "City") and transported to the City's lockup. Garretson alleged that she told the officers that she was diabetic and that she needed her insulin that night. Garretson even requested to be transferred to the Oakland County Jail because she knew she would receive medical treatment there. According to Garretson, these requests were refused. Garretson remained in the City's lockup overnight, feeling the effects of insulin deprivation.  The next morning, she was questioned, reviewed medically by paramedics and returned to her cell. Ultimately, Garretson was transported to the hospital where she remained for several days suffering from diabetic ketoacidosis. *Id.* at 794-795.  Like Plaintiff, Garretson brought claims against the City and the officers under 42 U.S.C. §1983, alleging in part, that the City had a policy of deliberate indifference to her serious medical need. The courts disagreed, ruling that: (a) Garretson failed to present evidence that the City had a custom of denying medical treatment; (b) there was no evidence of a clear and persistent pattern of such treatment demonstrating a policy of inaction; and (c) there was no evidence to that the City was the "moving force" behind Garretson's injuries. *Id.* at 796.

1.    *The Township Defendants*

As in *Garretson,* Plaintiff alleges that she told various CTPD officers that she had a serious medical condition requiring medication and police officers refused to provide medication. Unlike *Garretson,* however, and even more detrimental to her case, Plaintiff: (1) did not remain in the CTPD lockup overnight, (2) had no seizures or other medical events while in custody, and (3) was transferred within 5.5 hours to the MCJ, where medical treatment was available.  Moreover, as in *Garretson*, Plaintiff: (a) has presented no evidence that the Township had a custom (or even an occasion) of denying medical treatment, and (b) has presented no evidence of a clear and persistent pattern of such treatment that could demonstrate a policy of inaction by the Township or any of the Township Defendants. Finally, Plaintiff has not presented and cannot present any evidence that the Township or the Township Defendants were the "moving force" behind her injuries. Accordingly, the Court concludes that the Township Defendants are entitled to summary judgment on Plaintiff's claim regarding the Township's policy.

2.      *The County Defendants*

Plaintiff alleges the County Defendants failed to instill proper policies and procedures. As discussed above, the County adopted a policy of engaging the services of a quality health care provider; at the time of the incident at issue, that provider was CMS. The health care provider is required to establish policies and procedures in compliance with local, State and Federal regulations governing health care services for prisoners. Pursuant to the County policy, the inmates' medical, psychiatric and dental concerns are referred directly to the medical provider. As set forth above, this practice has long been recognized as appropriate and a basis for granting summary judgment in favor of a municipality. *See Graham*, 358 F.3d at 384 (defendant entitled to summary judgment because a policy of deferring to medical professionals was not deliberately indifferent to Graham's medical

18

need).  Further, as discussed above, Plaintiff offers no evidence of any other constitutionally required policy or procedure, nor has Plaintiff offered anything other than conclusory allegations (*i.e.*, Plaintiff has offered no evidence) that the policies and/or procedures adopted by the County are constitutionally inadequate.

Plaintiff cites a number of cases in support of her argument that the actions of CMS employees constitute deliberate indifference. *See, e.g.*, *Johnson v. Hay*, 931 F. 2d. 456 (8th Cir. 1991); *Hudson v. McHugh*, 148 F.3d. 859 (7th Cir. 1998); *Weyant v. Okst*, 101 F. 3d. 845 (2nd Cir. 1996); *Natale v. Camden Cty. Correctional Facility*, 318 F. 3d. 575 (3rd Cir. 2003); *Fox v. Barnes*, 1:09-cv-05453 (N.D. Ill., Jan. 18, 2013).  The Court concludes that argument is not persuasive for several reasons.  First, as discussed above, the care rendered by the CMS employees, in and of itself, could not support a finding of a constitutional deprivation based on deliberate indifference.  Second, none of the cases cited by Plaintiff are binding on this Court.  Third, even if Plaintiff's argument had any merit, the cases cited by Plaintiff are distinguishable.

As in *Garretson, surpa*, Plaintiff: (a) has presented no evidence that the County had a custom (or even an occasion) of denying medical treatment, and (b) has presented no evidence of a clear and persistent pattern of such treatment that could demonstrate a policy of inaction by the County or any of the County Defendants. Finally, Plaintiff has not presented and cannot present any evidence that the County or the County Defendants were the "moving force" behind her injuries. Accordingly, the Court concludes that the County Defendants are entitled to summary judgment on Plaintiff's claim regarding the County's policy.

## C.    Failure To Train

19

In *City of Canton*, the Supreme Court set forth the standard for municipal liability under a failure to train theory as follows:

> We hold told today that inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition in *Monell* [*supra*] . . . that a municipality can be liable under §1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a City "policy or custom" that is actionable under §1983.

*Id.* at 388.  The Supreme Court further stated that in determining the municipality's liability, the focus must be on the adequacy of the training program itself and not on whether a particular officer was adequately trained. The mere fact that a particular officer may be inadequately trained is not sufficient to demonstrate liability, as the officer's shortcomings could be caused by his own ineptitude or negligent administration of the program. *Id.* at 391.  Therefore, in order to hold a municipality liable under §1983 for failure to train, the Plaintiff must show that: (1) the training program is inadequate to the task the officer must perform; (2) the inadequacy is the result of deliberate indifference; and (3) the inadequacy is "closely related to" or "actually caused" the Plaintiff's injury. *Plinton v. County of Summit,* 540 F.3d 459, 464 (6th Cir. 2008); *Ellis v. Cleveland Municipal Sch. Dist.,* 455 F.3d 690, 700 (6th Cir. 2006); *Matthews v. Jones*, 35 F.3d. 1046, 1049 (6th Cir. 1994); *Hill v. McIntyre*, 884 F.2d. 271, 275 (6th Cir. 1989).

To establish deliberate indifference, the plaintiff "must show <u>prior</u> instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury."

20

*Plinton,* 540 F.3d at 464. A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train claims. *Bd. of Cty. Comm'rs. v. Brown*, 520 U.S. at 409.

      1.    *The Township Defendants*

Plaintiff has offered no evidence of any pattern of similar constitutional violations by Township officers, and Plaintiff has offered no evidence of any deliberate indifference in training Township officers regarding epileptic prisoners. In fact, Plaintiff failed to even address this argument in her response brief. Moreover, (1) the undisputed evidence reflects that the Township instructs its officers to contact paramedics when prisoners either ask for medical attention or outwardly exhibit a need for medical care, (2) there is no evidence establishing a pattern of ignoring the need for training regarding prisoners claiming to be epileptic, and (3) Plaintiff admits that her seizure(s) would not have occurred had she received her medication upon transfer to the MCJ. Therefore, the Court finds that there is no evidence to support a finding that: (a) the Township was on notice of a need to train its officers regarding prisoners claiming to be epileptic, (b) the Township has a pattern of constitutional violations by untrained officers, or (c) the Township's alleged failure to train caused Plaintiff's claimed injuries. Thus, the Township cannot be subject to municipal liability for failing to have a different policy with regard to prisoners claiming to be epileptic, as there simply was no evidence putting the Township on notice of such a need, nor any case law requiring such a policy. *Ford v. County of Grand Traverse,* 535 F.3d 483, 498 (6th Cir. 2008) (citing *Garettson,* 407 F.3d at 796 (concluding that the plaintiff's municipal-liability claim failed because there was no evidence that the city had either "a custom of denying medical treatment" to inmates

or "notice of a clear and persistent pattern of such treatment")); *Miller v. Calhoun Cty.,* 408 F.3d 803, 815-16 (6th Cir. 2005).

For all the reasons stated above, the Court finds that there is no evidence: (1) of inadequate training on the part of the Township, (2) that any inadequacy was the result of the Township's deliberate indifference, or (3) that the alleged inadequacy was "closely related to" or "actually caused" Plaintiff's injuries. *See Balbridge v. Jeffreys*, 2009 WL 275669, at *8 (E.D. Mich. February 5, 2009) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)). Accordingly, the Court holds that the Township Defendants are entitled to summary judgment on Plaintiff's failure to train claim.

2. *The County Defendants*

Plaintiff first alleges that the County failed to adequately train or supervise its officers. Plaintiff, however, has presented no evidence that would permit a finding that the County failed to train or supervise its deputy sheriffs. To the contrary, the uncontradicted evidence before the Court is that all County officers are: (a) trained at a police training academy approved by the Michigan Commission on Law Enforcement Standards, and (b) certified by the same commission. In addition, it is undisputed that the County officers who serve in a corrections function must undergo significant additional training regarding the rules, regulations, policies and procedures of confinement. Moreover, as the County argues, discovery is complete and: (1) Plaintiff has failed to identify an expert who will opine regarding the training offered to County officers, (2) Plaintiff has failed to depose any member of the command staff regarding the methods or types of training provided, and (3) Plaintiff has offered no evidence of a systemic failure to train or that any training that was given caused or contributed to this occurrence.

Plaintiff also alleges that the County acquiesced in a pattern of abuse by the MCSD and its officers. To establish this claim, Plaintiff must show: (1) the existence of a clear, persistent pattern of illegal activity; (2) notice or constructive notice on the part of Defendant; (3) the County's tacit approval of unconstitutional conduct and deliberate indifference in their failure to act; and (4) a municipal custom which was the moving force or direct causal link to the constitutional deprivation. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). Municipal liability is imposed only upon a showing of a "pervasive pattern" or "history of widespread abuse" which is known to the municipality and its policymakers. Plaintiff must demonstrate "deliberate indifference" to that pattern and establish a failure to intervene, discipline, train or supervise. *Barry v. City of Detroit*, 25 F.3d. 1342, 1354 (6th Cir. 1994).

Once again, Plaintiff has offered no evidence that could support a finding of a pattern or history by the MCSD or its officers (or CMS employees, for that matter) of failing to provide medications to MCJ inmates. Plaintiff has not presented historical documents or records from the MCJ or CMS that would support such allegations. Likewise, Plaintiff has not deposed any MCJ command officer or former inmate, nor has she presented any affidavit or other evidence from such a person or persons. In sum, the Court finds that Plaintiff has offered no evidence of a pattern of misconduct by any of the County Defendants.

For all the reasons stated above, the Court finds that there is no evidence: (1) of inadequate training on the part of the County or any acquiescence of a pattern of abuse by any County employees (or CMS employees providing medical services at the MCJ pursuant to the Health Services Agreement), (2) that any alleged inadequacy was the result of the County's deliberate indifference, or (3) that the alleged inadequacy was "closely related to" or "actually caused"

23

Plaintiff's injuries. *See Balbridge v. Jeffreys*, 2009 WL 275669, at *8 (E.D. Mich. February 5, 2009) (citing *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992)).  Accordingly, the Court holds that the County Defendants are entitled to summary judgment on Plaintiff's failure to train claim.


## V.  CONCLUSION

Accordingly, and for the reasons set forth above, IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by the Township Defendants (Docket #30) and the Motion for Summary Judgment filed by the County Defendants (Docket #31) are GRANTED.  Judgment shall be entered accordingly.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: January 15, 2014